Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## OPINION

No. 04-11-00322-CV

**IN THE INTEREST OF A.C.F.H.**, and D.A.B.H., Children

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-06175
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  March 7, 2012

AFFIRMED

This is an appeal from an April 7, 2011 Nunc Pro Tunc Order in Suit Affecting Parent-Child Relationship.  The order was entered after the parties entered into a Mediated Settlement Agreement.  The appellant, "Margaret," is the biological mother of the two children who are the subject of the order.  Appellee, "Michael," is the step-father of both children.  In the order, the trial court appointed Michael and Margaret as joint managing conservators of the children.  In a single issue on appeal, Margaret asserts the trial court lacked subject-matter jurisdiction to enter the order because Michael lacked standing to file an original suit affecting the parent-child relationship.  We disagree and affirm.

**ANALYSIS**

Although Margaret did not challenge Michael's standing before the trial court, standing is implicit in the concept of subject-matter jurisdiction and, therefore, is a threshold issue that we may address for the first time on appeal. *In re Vogel*, 261 S.W.3d 917, 920 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *In re SSJ–J*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.). In a suit affecting the parent-child relationship, standing is governed by the Texas Family Code, and the party seeking relief must allege and establish standing within the parameters of the language used in the statute. *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied). Standing cannot be conferred by consent or waiver and may be raised for the first time on appeal. *In re A.M.S.*, 277 S.W.3d 92, 95 (Tex. App.—Texarkana 2009, no pet.).

The Texas Family Code section applicable here provides that "[a]n original suit may be filed at any time by . . . a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition . . . ." TEX. FAM. CODE ANN. § 102.003(a)(9) (West 2008). The purpose of section 102.003(a)(9) is to create standing for those who have developed and maintained a relationship with a child over time. *T.W.E. v. K.M.E.*, 828 S.W.2d 806, 808 (Tex. App.—San Antonio 1992, no writ) (examining former Family Code section 11.03(a)(8)).

Margaret asserts Michael failed to plead or prove with any specificity the statutory time period, and she contends Michael failed to plead that he had "actual control" over the two children. Margaret also asserts Michael failed to show he had the legal or constructive authority to guide or manage the children.

We review de novo a challenge to a party's standing. *Tex. DOT v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). Ordinarily, a petitioner must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). When, as here, standing is challenged for the first time on appeal, there is no opportunity to cure a pleading defect. *Id.* "Therefore, when a Texas appellate court reviews the standing of a party [for the first time on appeal], it must construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing." *Id.* Accordingly, we construe Michael's petition in his favor and we look to the entire record to determine whether any evidence supports his standing to bring his petition.

Section 102.003 requires that the petitioner have had actual care, control, and possession of the child "for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE § 102.003(a)(9). In his original petition and his amended petition, Michael alleged he had standing "to bring this suit in that the children have resided with him and have been in his care, custody and control for more than six months." On appeal, Michael explains he did not allege "for at least six months ending not more than 90 days preceding the date of the filing of the petition" because, at the time he filed the petition, his actual care, control, and possession of the children had not ended and was, in fact, still on-going. As discussed further below, our review of the record indicates evidence exists to support this contention.

Pursuant to an October 14, 2004 "Child Safety Evaluation and Plan," Margaret agreed "to voluntarily place the children with the father [Michael]." The plan stated November 14, 2004 as its end date. On October 19, 2004, Michael filed a petition in suit affecting the parent-child relationship in trial cause number 2004-CI-15869 in Bexar County. On November 2, 2004, the

trial court entered "Temporary Orders in Suit Affecting the Parent-Child Relationship" ("the 2004 temporary orders"). Pursuant to these orders, Michael was appointed temporary sole managing conservator and Margaret was appointed temporary possessory conservator of both children. Michael had the following "rights and duties" under the orders:

1. the right to have physical possession and to direct the moral and religious training of the children;
2. the duty of care, control, protection, and reasonable discipline of the children;
3. the duty to provide the children with clothing, food, shelter, education, and medical, psychological, and dental care;
4. the right to consent for the children to medical, psychiatric, dental, and surgical treatment and to have access to the children's medical records;
5. the right to receive and give receipt for payments for the support of the children and to hold or disburse funds for the benefit of the children;
6. except as otherwise provided by the Texas Family Code, the right to the services and earnings of the children;
7. the right to consent to marriage and to enlistment in the armed forces of the United States;
8. the right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;
9. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and
10. the right to designate the primary residence of the children and to make decisions regarding the children's education.

Margaret, on the other hand, was given limited visitation with the children and limited authority over the children during her periods of possession.

The temporary orders were to continue in effect until the signing of a final order or further order of the court. The record does not contain any final orders; however, the docket sheet indicates the 2004 case was dismissed for want of prosecution on January 30, 2007. Less than two months later, the trial court considered Michael's motion to reinstate the case on the docket and signed an order of reinstatement on March 6, 2007, which specifically stated the case was reinstated "to the same effect as if it had never been dismissed." The docket indicates the

case was again dismissed for want of prosecution on April 8, 2009. One day later, Michael filed the underlying original suit affecting the parent-child relationship that is the subject of this appeal. Nothing in the record indicates Michael's duties under the 2004 temporary orders changed between the date the orders were entered in 2004 and the date Michael filed his new petition on April 9, 2009. In fact, various medical and school records indicate Michael sought medical attention as needed for the children and was involved with their schooling. The record also contains a "Consent to Name Change" form signed by each child, dated November 2, 2009, in which each child identifies Michael as "the man who raised me and who I consider my father . . . ."

We are aware there is some disagreement among the courts of appeals over what constitutes "actual control." The Beaumont Court of Appeals has held that "'control' must mean something more than the control implicit in having care and possession of the child if the word is to be given effect and treated as more than surplusage. The word must be understood in the context of the rights, duties, and responsibilities of a parent." *In re K.C.C.*, 292 S.W.3d 788, 792-93 (Tex. App.—Beaumont 2009, no pet.). The court found it significant that there was no evidence the mother ever agreed to relinquish legal rights concerning the child, and in fact, the evidence established the contrary because the mother had refused to give the petitioner, the non-parent who lived with the mother and her child, legal rights concerning the child when he expressed an interest in adopting the child. *Id.* at 792. The court concluded the petitioner lacked standing because, until he obtained the temporary orders at issue in the appeal, he had no legal right of control over the child and no authority to make decisions on behalf of the child. *Id.* at 793. The Fort Worth Court of Appeals has held the petitioners, the paternal grandparents, lacked standing because the respondent-mother did not voluntarily relinquish permanent care, control,

and possession of child for the six months preceding the petitioners filing suit because the respondent-mother controlled where the child would stay and for how long and the petitioners did not have such control; and there was no evidence the respondent-mother intended her child to stay with the petitioners for any extended periods of time. *See In re Kelso*, 266 S.W.3d 586, 590-91 (Tex. App.—Fort Worth 2008, no pet.). On the other hand, the Austin Court of Appeals did not agree that "actual control" hinged on whether a petitioner possesses legal authority. *Jasek v. Tex. Dep't of Family and Protective Serv.*, 348 S.W.3d 523, 532 (Tex. App.—Austin 2011, no pet.). In that case, DFPS sought to terminate the parental rights of both biological parents and had placed the children with the Jaseks with the intention that the children stay with the Jaseks permanently. The children were later removed from their home after one of the Jaseks tested positive for marijuana. The Jaseks then intervened in the suit affecting the parent-child relationship and DFPS moved to strike their intervention on the grounds they lacked standing. The trial court concluded the Jaseks lacked standing.

On appeal, DFPS argued the Jaseks could not establish that they had "actual control" over the children because, at all relevant times, DFPS had sole legal control over the children. *Id.* at 531. DFPS did not dispute the Jaseks had "actual care" and "actual possession" of the children for the requisite time period. Instead, DFPS argued the Jaseks could not have had "actual control" during that time because that required having the "authority to make legal decisions, decisions of legal significance and including the responsibilities of a legal parent." DFPS insisted that only DFPS had "actual control" over the children because it was vested with the ultimate legal authority to make decisions for the children, including the discretion to remove them from the Jaseks' home at any time. *Id.* at 532. The court of appeals disagreed that "actual

control" under section 102.003(a)(9) hinged on whether a caregiver possesses this sort of legal authority.

The Austin court noted that the term "actual" indicates "something that exists in fact, as opposed to something that is a function of legal duties or imputation" and "control" "means the 'power or authority to guide or manage: directing or restraining domination.'" *Id.* at 533. The court concluded "'actual . . . control . . . of the child,' as used in section 102.003(a)(9), means the actual power or authority to guide or manage or the actual directing or restricting of the child, as opposed to legal or constructive power or authority to guide or manage the child." *Id.* The court concluded these words reflected "the Legislature's intent to create standing for those who have, over time, developed and maintained a relationship with a child entailing the actual exercise of guidance, governance and direction similar to that typically exercised by parents with their children." *Id.*; *see also In re K.K.C.*, 292 S.W.3d at 795 (McKeithen, C.J., dissenting) ("Nothing in the plain language of the statute necessitates the 'relinquishment' or 'abdication' by the biological parent of her parental rights, duties or responsibilities. There is no exclusivity requirement in the statute's plain language. . . . There is, however, a rational basis for conferring standing on a person who shares actual care, control, and possession of a child with that child's parent for a period in excess of six months.").

In her brief on appeal, Margaret alleges Michael failed to show he had actual control, "meaning the actual power or authority to guide or manage" the children. During oral arguments before this court, Margaret invited this court to follow the cases that require a showing that the parent has abdicated actual control of the children in order for the non-parent to show standing. We decline the invitation for two reasons. First, as this court has previously held, the purpose of section 102.003(a)(9) is to create standing for those who have developed and maintained a

relationship with a child over time. *See T.W.E*, 828 S.W.2d at 808. Second, under any of the standards set forth by our sister courts, we conclude Michael has standing because the record indicates that as of the date he filed the underlying petition, he had not only the actual power and authority to guide or manage the children, he also had the legal power and authority to do so. Therefore, the record contains evidence that supports his standing to bring his petition.

## CONCLUSION

For the reasons stated above, we affirm the trial court's order.

Sandee Bryan Marion, Justice