

# NUMBER 13-23-00371-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN RE S.M.

---

## On Petition for Writ of Mandamus.

---

# MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña**
**Memorandum Opinion by Justice Tijerina[1]**

Relator S.M.[2] filed a petition for writ of mandamus requesting this Court to compel the trial court[3] to vacate interim orders issued in a suit affecting the parent-child relationship. Relator presents one issue, with related argument, through which he asserts

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] We use pseudonyms or initials to refer to the parties. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

[3] This original proceeding arises from trial court cause number F-6546-16-B in the 93rd District Court of Hidalgo County, Texas, and the respondent is the Honorable Fernando G. Mancias. *See* TEX. R. APP. P. 52.2.

that the trial court abused its discretion by refusing to allow him "to put on all his evidence" before signing the interim orders on June 30, 2023. We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

This case ensued almost seven years ago. At the present time, relator and mother are divorced and are the parents of two minor children, A.M. and L.M. The parties have not been able to amicably co-parent, and the trial court has held numerous hearings and issued multiple temporary and interim orders regarding custody and possession of the children.

The divorce decree originally appointed relator and mother as joint managing conservators of the children and gave mother the exclusive right to designate the primary residence of the children within Hidalgo County. During the course of litigation, relator alleged that mother inflicted physical and mental abuse on the children and that she had failed to comply with the court's custody and possession orders. In 2020, relator filed a motion for modification of then-existing temporary orders requesting the trial court to name him as the children's primary managing conservator with the exclusive right to designate the residence of the children and that mother be given visitation.

After further proceedings, on October 5, 2020, the trial court sent a letter to counsel informing them that it had spoken with the amicus attorney for the children and was making several rulings. The letter provided that the trial court was: (1) naming relator and mother as joint managing conservators; (2) designating relator as the parent who

determines the children's primary residence; and (3) ordering the visitation schedule for parents living 100 miles apart, absent an agreement among the parties. The trial court advised the parties that it had not received testimony regarding child and medical support, so the hearing would resume on those issues. The trial court requested relator's counsel to prepare a temporary order incorporating these rulings.

On October 6, 2020, relator filed an "Emergency Motion for Issuance of Writ of Attachment." Relator alleged that mother failed to turn over L.M to relator as required by the trial court's October 5, 2020 rulings. That same day, the trial court signed an "Emergency Order for Issuance of Writ of Attachment for Child."

On October 8, 2020, mother filed an "Emergency Motion for Rehearing and Reconsideration of Temporary Orders" regarding the October 5, 2020 letter ruling and the October 6, 2020 writ of attachment. Mother alleged, in relevant part, that the youngest child, L.M., had a congenital heart defect, requested that she not be removed from Hidalgo County pending surgery, and requested the trial court to rescind the order of attachment. Mother further requested the trial court to reconsider its order granting relator primary conservatorship over the children and requested that it set a reasonable visitation schedule for relator restricted to Hidalgo County. Relator subsequently filed objections to rehearing and reconsideration and provided the trial court with briefing on his arguments.

On October 16, 2020, the trial court signed "Temporary Orders In Suit Affecting the Parent-Child Relationship." These orders are based on the trial court's letter ruling of October 5, 2020. The temporary orders appointed relator and mother as temporary joint

3

managing conservators of the children, gave relator the exclusive rights to designate the primary residence of the children without regard to geographic location and to enroll the children in school, and provided for a standard possession order.

The parties continued litigating the case. The trial court suspended the writ of attachment for L.M., leaving her in mother's possession, and issued various orders regarding weekend possession and access to the children. On December 23, 2020, the trial court signed "Interim Orders." These orders state that after reviewing the October 16, 2020 temporary orders and considering the argument of counsel, the trial court ordered: (1) mother to have visitation with the children from December 28, 2020 until January 3, 2021; (2) relator to have visitation with the children from January 3, 2021 until January 10, 2021; (3) the "non-possessory parent" to have access to the children during specific hours on three days each week; and (4) provided for the parents to exchange the children at a designated location in Alice, Texas. These interim orders also provide that the "orders are subject to change as the hearing continues," and again provide that the writ of attachment for L.M. "is temporarily suspended."

On February 1, 2021, relator filed a "Motion for Hearing on Writ of Attachment" regarding L.M. This motion states that relator had made numerous requests for enforcement of the writ of attachment regarding L.M., argued that the evidence at the last hearing supported his request for enforcement, and requested the trial court to order mother to deliver L.M. to relator "by a date certain."

On May 27, 2021, mother filed a "Motion for Interim Orders Pending Completion

4

of Motion for Reconsideration." According to mother:

> The Interim Orders signed by the Court on December 23, 2020, expired at 9:00 a.m. on January 10, 2021, and the hearing on [mother's] Motion for Reconsideration of Temporary Orders is still pending a determination by the Court. [Mother] would ask that an Interim Order be granted the right to establish primary residence of [A.M.] to [relator] and the right to establish primary residence of [L.M.] to [mother] as the parties have been in possession of each respective child during the pendency of these hearings.

Mother requested that the trial court order that relator have temporary custody of one child, and she be granted temporary custody of the other. On June 24, 2021, mother filed a second "Motion for Entry of Interim Orders Pending Completion of Motion for Reconsideration."

The parties continued rancorously litigating the case. On September 13, 2022, relator filed an "Emergency Motion to Modify Temporary Orders" alleging that "circumstances have materially changed," the current temporary orders were "completely unworkable," and that mother's recent actions would "greatly harm the children's educational and social development." Relator alleged, in summary, that mother was interfering with A.M.'s education and that mother's homeschooling L.M. was "impairing" L.M.'s "social development." Relator requested that the parties be appointed joint managing conservators of the children, that he be designated as the conservator with the right to designate the primary residence of the children and the exclusive right to make educational decisions for the children, and that mother be limited to restricted and supervised visitation based in part on "emotional abuse." Subsequently, on February 23, 2023, mother again filed a "First Amended Motion for Entry of Interim Orders Pending

5

Completion of Motion for Reconsideration."

On February 24, 2023, the trial court signed an order setting a hearing on mother's "First Amended Motion for Entry of Interim Orders Pending Completion of Motion for Reconsideration." The trial court's order states that the motion is set for hearing on March 9, 2023. The record does not indicate that a hearing was held on that date; however, on March 10, 2023, the trial court held a hearing which addressed, inter alia, relator's provision of medical benefits to L.M.

On June 30, 2023, the trial court signed the "Interim Orders" that are at issue in this original proceeding. These interim orders state that the trial court had entered previous interim orders on December 23, 2020 "relating to the Christmas vacation only" and that the hearing on mother's motion for reconsideration of temporary orders had continued and was still pending a determination by the court. The interim orders give relator the right to establish the primary residence of A.M. and give mother the right to establish the primary residence of L.M. The interim orders also provide for exchange of the children. The orders state that, "All pending motions should be heard expeditiously" and set a docket control conference to be held on July 14, 2023.

On July 21, 2023, relator filed a "Motion to Set Aside Interim Orders." Relator stated that he disagreed with the interim orders because "there have been multiple allegations of abuse suffered" by the children at the hands of mother; that he did not receive notice of the order; that he had been awarded joint managing conservatorship and appointed as the conservator with the exclusive right to designate the primary residence of both

6

children; and that the court "has not yet concluded the hearing on Petitioner's Motion for Rehearing and Reconsideration of Temporary Orders." The trial court denied relator's motion.

This original proceeding ensued. Relator presents one issue asserting that the trial court abused its discretion by refusing to allow relator to put on all of his evidence before issuing the interim orders, and in connection with this issue, further asserts that the trial court abused its discretion by issuing interim orders without notice and hearing and because it "did not show due regard for the children's safety and welfare." Relator requested emergency relief to stay the interim orders pending the resolution of his petition for writ of mandamus. This Court carried relator's request for emergency relief with the case and requested and received a response to the petition for writ of mandamus from mother. Relator has further filed a reply in support of his request for relief.

## II.    MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two

7

requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840. Because a trial court's temporary orders are not appealable, mandamus is an appropriate vehicle for review. *See In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding) (per curiam); *In re D.D.*, 661 S.W.3d 608, 617 (Tex. App.—El Paso 2023, orig. proceeding); *In re Walser*, 648 S.W.3d 442, 445 (Tex. App.—San Antonio 2021, orig. proceeding).

### III. RECORD

As a preliminary matter, mother asserts that relator failed to file a complete mandamus record; thus, this Court should deny his request for relief. Mother asserts that because relator is challenging a ruling arising from evidentiary hearings, relator's failure to provide the reporter's records for all evidentiary hearings defeats relator's right to relief. Mother further asserts that relator has failed to include "highly relevant pleadings and other orders from the trial court" in his mandamus record.

The relator bears the burden to provide the Court with a sufficient record to establish his right to relief. *See Walker*, 827 S.W.2d at 837; *In re J.A.L.*, 645 S.W.3d 922, 924 (Tex. App.—El Paso 2022, orig. proceeding); *In re Schreck*, 642 S.W.3d 925, 927 (Tex. App.—Amarillo 2022, orig. proceeding). The relator's record must include:

(1)     a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding; and

(2)     a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered in evidence, or a statement that no testimony was adduced in connection with the matter complained.

TEX. R. APP. P. 52.7(a). "After the record is filed, relator or any other party to the proceeding may file additional materials for inclusion in the record." *Id.* R. 52.7(b). In the instant case, relator filed a mandamus record containing seventeen items; mother filed a supplemental record containing eleven items, and relator filed a supplemental record containing the transcript of the March 10, 2023 hearing.

We conclude that relator provided the Court with a record sufficient to support his request for mandamus review. The required contents for a record filed in support of an original proceeding depend on what is "material" to the "claim for relief" or what is "relevant" to the "matter complained" about in the original proceeding. *See id.* R. 52.7(a)(1), (2). Thus, the required contents for a record filed in an original proceeding vary from case-to-case. *See id.* R. 52.7(a).

According to the parties' briefing, the trial court has held multiple evidentiary hearings on mother's motion for rehearing and reconsideration. The gravamen of relator's complaint is *not* that the trial court issued the wrong ruling based on an assessment of the evidence presented at these hearings. *See, e.g.*, *In re Athans*, 458 S.W.3d 675, 678 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (stating that "relators must provide this court with a mandamus record of all of the trial evidence before this court may determine whether the respondent abused his discretion in concluding that the trial evidence is factually insufficient"); *see also In re Lowery*, No. 05-14-01401-CV, 2014 WL 5862199, at *1 (Tex. App.—Dallas Nov. 13, 2014, orig. proceeding) (mem. op.) ("In cases in which the trial court has received evidence at the hearing giving rise to a mandamus

9

challenge, as in this case, the party seeking mandamus has an obligation to provide transcripts of any relevant evidentiary hearings."). Rather, relator's contention, in relevant part, is that the trial court held a hearing on interim orders without providing notice or an opportunity to be heard and that the trial court issued interim orders prior to the conclusion of the hearing on reconsideration, after relator's objection, without allowing relator to finish presenting his witnesses. Relator's record and supplemental record contain the documents and transcript material to this issue. In other words, while all evidentiary transcripts might be required for mandamus review in certain circumstances, such as those that require a sufficiency review, they are not required in this instance.

Mother further asserts that relator has failed to include "highly relevant pleadings and other orders from the trial court demonstrating that the parties and children have never operated under the October 2020 orders, and [relator] has never forced that issue." We have carefully reviewed mother's contention with regard to whether relator's record is misleading or omits important or material evidence. *See* TEX. R. APP. P. 52.11. Mother's contention is unfounded. We further note that mother has filed a robust supplemental record in support of her contentions that mandamus relief should be denied on the merits. *See id.* R. 52.7(b).

We conclude that relator has provided a record sufficient to determine the issue presented, and we reject mother's argument otherwise.

### IV. APPLICABLE LAW

In a suit affecting the parent-child relationship, a trial court may make temporary

orders, including the modification of a prior temporary order, for the safety and welfare of a child. *See* TEX. FAM. CODE ANN. § 105.001(a). The movant seeking temporary orders, or the modification of a prior temporary order, has the burden to show that the orders are necessary for the safety and welfare of the children. *In re Rogers*, 370 S.W.3d 443, 445, 447 (Tex. App.—Austin 2012, orig. proceeding) (concluding that the trial court committed a clear abuse of discretion because the movant produced no evidence that the orders were necessary for safety and welfare). Certain orders, such as those regarding temporary conservatorship of children, may not be rendered without notice and a hearing. *See* TEX. FAM. CODE ANN. § 105.001(b); *In re D.D.*, 661 S.W.3d at 617; *In re Chester*, 357 S.W.3d 103, 106 (Tex. App.—San Antonio 2011, orig. proceeding); *In re Herring*, 221 S.W.3d 729, 730 (Tex. App.—San Antonio 2007, orig. proceeding). A trial court abuses its discretion in modifying temporary orders for the conservatorship of a child without notice and hearing, and that abuse of discretion may be corrected by mandamus. *In re Chester*, 357 S.W.3d at 107–08; *In re Herring*, 221 S.W.3d at 730; *see also In re Farmer*, No. 10-23-00017-CV, 2023 WL 2308232, at *3 (Tex. App.—Waco Mar. 1, 2023, orig. proceeding) (mem. op.); *In re Bustos*, No. 04-14-00755-CV, 2014 WL 7339259, at *2 (Tex. App.—San Antonio Dec. 23, 2014, orig. proceeding) (mem. op).

## V.  ANALYSIS

Relator contends that the trial court erred by entering interim orders before he had been given an opportunity to present his evidence at the reconsideration hearings. Relator states that the trial court has held fifteen hearings on mother's motion for

11

reconsideration wherein mother has been allowed to introduce all of her evidence, but relator has not, and these hearings are ongoing. In connection with this issue, relator asserts that the trial court abused its discretion by issuing interim orders which modified the children's custody without providing the statutorily required notice and hearing and which "did not show due regard for the children's safety and welfare." Mother contends, in summary, that relator had notice of the hearing and an opportunity to be heard, that relator did not object to proceeding on mother's request for interim orders, and that the trial court did not abuse its discretion.

## A.    Notice and Hearing

Mother asserts that relator has not shown an abuse of discretion because relator "had notice of the hearing on [m]other's request for interim orders, but the record fails to show that he attempted to present any evidence at that hearing." The record shows that on February 24, 2023, the trial court signed an order setting a hearing on mother's "First Amended Motion for Entry of Interim Orders Pending Completion of Motion for Reconsideration" to occur on *March 9, 2023*, at 9:00 a.m. According to the docket sheet, a hearing was not held on that date. The hearing that occurred immediately prior to the issuance of the June 30, 2023 "Interim Orders" occurred on March 10, 2023. Relator has provided the reporter's record for that hearing.

At the inception of the March 10, 2023 hearing, counsel for relator stated that he understood that the purpose of the hearing was to address mother's "request to have an order signed." The trial court stated his understanding that the hearing would comprise

"just argument," and counsel for relator confirmed that understanding. Mother's attorney pointed out that "[t]he docket sheet has a bunch of other motions on it." After review, the trial court stated that the docket sheet reflected that the pending motions included a motion for interim orders and a motion for sanctions and attorney's fees. Counsel for relator informed the trial court that he was no longer seeking sanctions against mother but was ready to proceed "on other issues regarding the VA benefits." Mother's counsel informed the court that "[w]e're here for a very limited purpose," that being, mother's "attempt[] to obtain the Tricare benefits card for medical purposes." There is nothing in the record indicating that the trial court provided notice to relator that mother's request for interim orders were set to be heard on March 10, 2023, or that relator should have been prepared to adduce evidence regarding same. We reject mother's contention that relator had notice of a hearing on mother's request for interim orders or an opportunity to present evidence on that matter.

## B.     Preservation of Error

In her response to the petition for writ of mandamus, mother also argued that because there is no transcript of the hearing on mother's request for the entry of interim orders, "it is impossible to know if [relator] objected to the trial court's consideration of the matter without permitting him the opportunity to present evidence, or if he alerted the trial court to what his evidence would show." As stated previously, relator subsequently provided a supplemental reporter's record regarding the hearing at issue. The record indicates that relator's counsel directly, repeatedly, and clearly objected to the entry of

13

interim orders because the evidentiary hearings on reconsideration had not concluded, and he had not finished presenting his case.

During the March 10, 2023 hearing, while discussing the children's medical benefits, mother's counsel requested the trial court to enter an order that "memorializes what the status quo is." Relator's counsel immediately proffered "an objection." Counsel for relator further stated:

> We're going to object to it because we started a hearing where we've only been able to call one witness. They called a whole slew of witnesses, and we called one witness, and that one witness that we called had some very troubling things to say about [mother]. We've got another witness[], and they know this, that's going to . . . talk about all of the domestic violence that [mother] perpetuated on [child].
>
> . . . .
>
> If you remember when we started this hearing, right now we've got an order that gives us primary care of both kids. And they've—the Court's never enforced that order. We came to you[,] and you said, listen, I'm just going to kind of leave it the way it is until we get this hearing set and done.
>
> . . . .
>
> But it's the same—you already talked to us about this. You already told us . . . [you] can't sign that order until we're done with the hearing. Let's concentrate on setting the hearing and allowing [relator] to put his end of the case, so [you] can find out what [you're] going to do. The reason that they want you to sign an order, Judge, is because they're trying to avoid the inevitable, that you're going to be faced with a very difficult decision because it's going to be unequivocally clear that [mother] has always been responsible of beating the tar out of these kids.
>
> And we heard from that one witness, and I think the only other witness that is left is [A.A.] and there was another one. I forget the name, Judge. It's been a long time. But these are two of her best friends, two of her best friends, and one of them has already told you the terrible, troubling behavior that she exhibited towards [the child].

14

The parties thereafter returned to discussing relator's obligation to provide the children with access to his VA medical benefits. The trial court swore in both relator and mother, and they provided testimony regarding how to effectuate access to the medical benefits. After additional discussion about resolving the issue, the trial court asked counsel if there were any additional matters to address. Counsel for mother reiterated her request for the trial court to enter an interim order. Relator's counsel advised that, "the Court cannot do it" and argued that the trial court, attorney ad litem, and even mother's counsel had acknowledged that the hearing on reconsideration was ongoing. Mother's counsel again requested the entry of an order that "memorializes the status quo." Relator's counsel suggested that mother was attempting to avoid a finding of domestic violence under the family code and contended that the trial court could not "sign any order other than enforce the order that we've got until we finish the hearing." Ultimately, relator's counsel reiterated, "We're entitled to finish our case."

Under the foregoing circumstances, relator's objection to the entry of interim orders when the evidentiary hearings on mother's motion for reconsideration were in progress was clear and unequivocal. *See* TEX. R. APP. P. 33.1(a). Further, relator informed the trial court of the identity of his planned witnesses and the subject matter of their proposed testimony. There was no argument or indication in the record suggesting that this testimony would be cumulative in nature. *See* TEX. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

delay, or needlessly presenting cumulative evidence."). We thus conclude that relator preserved error, and we reject mother's contention otherwise.

## C.    Merits

Here, the trial court's temporary orders gave relator the right to determine the primary residence of the children and the right to enroll them in school and awarded standard possession to the parents; however, the June 30, 2023 interim orders divest relator of the right to establish the primary residence of one child and change the possession schedule for the children. In summary, because the challenged order in this original proceeding is an order modifying a prior temporary order regarding custody, relator was entitled to notice and an adversary hearing before the entry of a new temporary order modifying the custody of the children. *See* TEX. FAM. CODE ANN. § 105.001(a), (b), (h); *In re Chester*, 357 S.W.3d at 107; *In re Herring*, 221 S.W.3d at 730. Relator received neither notice or a hearing of the trial court's consideration of interim orders and was not allowed to finish presenting evidence on mother's motion for reconsideration. Relator was thus deprived of the opportunity to rebut mother's requests for reconsideration and for interim orders. *In re McPeak*, 525 S.W.3d 310, 315 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (discussing prejudice caused when "the trial court stopped the hearing before Mother finished presenting her evidence").

Finally, mother also asserts that relator "has failed to show that the trial court's June 2023 orders were not entered for the safety and welfare of the children." Mother's argument misplaces the burden of proof. As the proponent of the motion for entry of

16

interim orders, mother had the burden to show that the temporary orders should be modified based on the safety and welfare of the children. *See In re McPeak*, 525 S.W.3d at 315; *In re Rogers*, 370 S.W.3d at 446. Mother did not argue that the entry of interim orders was necessary for the safety and welfare of the children but merely alleged that they should be entered to reflect the status quo, and further, mother did not adduce evidence in support of her request for modification. Accordingly, the trial court abused its discretion in issuing temporary orders without any supporting evidence regarding safety and welfare. *See In re Rogers*, 370 S.W.3d at 446; *see also In re D.M.L.*, No. 02-22-00451-CV, 2022 WL 17841837, at \*11–12 (Tex. App.—Fort Worth 2022, orig. proceeding) (mem. op.).

## D. Laches

Finally, mother asserts that relator's complaint is barred by laches because the June 2023 interim orders "effectively required the parties to maintain the status quo as established by the December 2020 temporary orders." According to mother, relator "should not now be permitted to launch a complaint about orders and conservatorship arrangements that have existed for over two years, and his failure to acknowledge this reality [before] this Court is telling." Relator asserts that any argument regarding delay must fail because he filed his petition for writ of mandamus within one week of the trial court's denial of his motion to set aside the June 2023 interim orders, and mother has not demonstrated any prejudice caused by the delay.

Mandamus is not an equitable remedy; however, its issuance is discretionary and

17

largely controlled by equitable principles. *In re Am. Airlines, Inc.*, 634 S.W.3d 38, 42 (Tex. 2021) (orig. proceeding) (per curiam). "Thus, a relator who unduly or unreasonably delays filing a petition for mandamus relief may waive its right to such relief unless the delay is justified." *In re Am. Airlines, Inc.*, 634 S.W.3d at 43; *see In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009) (orig. proceeding) (per curiam). To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting its rights and also the moving party's good faith and detrimental change in position because of the opposing party's delay. *In re Laibe*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding) (per curiam); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989); *In re Mabray*, 355 S.W.3d 16, 22 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied]).

We reject mother's contentions that delay should bar mandamus review. The trial court signed interim orders on June 30, 2023, relator filed a motion to set aside the interim orders on July 21, 2023, the trial court denied relator's motion on August 10, 2023, and this original proceeding ensued on August 16, 2023. The record does not support mother's contentions that relator delayed in pursuing mandamus relief. *See In re Am. Airlines, Inc.*, 634 S.W.3d at 43; *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d at 676. Moreover, mother has not argued that the alleged delay has caused her prejudice or a detrimental change in position. *See In re Laibe*, 307 S.W.3d at 318. Further, as we have stated, in matters involving child custody and possession and the safety and welfare of children, "justice would demand a speedy resolution of this matter which would not be

18

served by applying a laches analysis and waiting to determine the merits until final judgment." *In re M.R.*, No. 13-21-00259-CV, 2021 WL 4502649, at *3 (Tex. App.—Corpus Christi–Edinburg Oct. 1, 2021, orig. proceeding) (mem. op.); *see, e.g.*, *In re Roxsane R.*, 249 S.W.3d 764, 771 (Tex. App.—Fort Worth 2008, orig. proceeding). In so ruling, we note that although the record shows periods of delay by relator in seeking relief, overall, the record also indicates that relator has repeatedly attempted to resolve the matters presented here. Based on the foregoing, we reject mother's argument that the petition for writ of mandamus should be denied based on delay.[4]

## E.    Summary

We conclude that the trial court abused its discretion in issuing the interim orders, and thus we sustain the issue presented in this original proceeding. We further conclude that relator lacks an adequate remedy by appeal.

## VI.    CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the record, the response filed by mother, the reply, and the applicable law, is of the opinion that relator has met his burden to obtain relief. Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to vacate the June 30, 2023 interim

---

[4] Relator further asserts that laches does not apply to bar relief here because he is seeking to enforce a legal rather than equitable right. Relator's argument is premised on the concept that laches bars equitable rights but may not be invoked to resist a purely legal right. *Compare Peterson, Goldman & Villani, Inc. v. Ancor Holdings, LP*, 584 S.W.3d 556, 568 (Tex. App.—Fort Worth 2019, pet. denied) (stating that laches may bar legal rights), *with Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied) (providing that laches will not defeat a claim brought strictly on legal grounds). We need not address this argument given our disposition on other grounds.

orders and to proceed in accordance with this memorandum opinion. The writ will issue only if the trial court fails to promptly comply. We dismiss as moot relator's request for temporary relief.

In so ruling, we note that "[t]rial courts are generally granted considerable discretion when it comes to managing their dockets. Such discretion, however, is not absolute." *In re Conner*, 458 S.W.3d 532, 534 (Tex. 2015) (orig. proceeding) (per curiam); *see In re Bordelon*, 578 S.W.3d 197, 201 (Tex. App.—Tyler 2019, orig. proceeding). Here, the parties have been litigating mother's motion for rehearing and reconsideration for more than two years. Given the ongoing strife, the significant issues presented in this case, and the extended impairment to parental and sibling access caused by the duration of this matter, we are confident that the trial court will promptly resolve the pending matters with full due process afforded to all parties, and, to the extent possible, encourage the parents to work together for a resolution that will benefit the children.

JAIME TIJERINA
Justice

Delivered and filed on the
4th day of October, 2023.